UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANN CONVERSO, JOAN CRAFT, SANDRA ROBINSON, MILDRED TAYLOR, and ILLINOIS NURSES ASSOCIATION, | ) ) ) ) | 09 C 7336 |
| Plaintiffs, | ) ) | Judge Feinerman |
| vs. | ) ) | |
| UNITED AMERICAN NURSES, CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE, NATIONAL NURSES UNITED, MASSACHUSETTS NURSES ASSOCIATION, JEAN ROSS, SANDRA FALWELL, CAROLYN HIETAMAKI, and LINDA HAMILTON, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises from the merger of Defendant United American Nurses ("UAN") with two other unions, Defendants California Nurses Association/National Nurses Organizing Committee ("CNA/NNOC") and Massachusetts Nurses Association ("MassNA"), into a new union, Defendant National Nurses United ("NNU"). Plaintiffs Ann Converso and Joan Craft are, respectively, the former President and Vice-President of UAN. Plaintiff Illinois Nurses Association ("INA") is a labor organization and one of UAN's founding affiliates. The remaining parties, all individuals, need not be separately identified or discussed.

Converso, Craft, and INA initially brought this suit against UAN, alleging that the then-pending merger would dissolve UAN in violation of its Constitution. Two weeks into the litigation, Judge Manning issued an order allowing certain parties to intervene and denying Plaintiffs' motion for a temporary restraining order to enjoin UAN from consummating the

merger. *See* 2009 WL 4547578 (N.D. Ill. Dec. 3, 2009). Other parties intervened, and the complaint was amended to allege, on INA's behalf, that NNU violated the merger agreement by filing a (successful) NLRB petition to represent registered nurses at the University of Chicago Medical Center, a bargaining unit represented until then by INA. Defendants have moved for summary judgment on both of Plaintiffs' claims. Their motions are granted.

**Background**

The following facts are undisputed, either by the parties' agreement or because a party's objection to the fact failed to comply with Local Rule 56.1(b)(3). UAN was a national labor organization representing registered nurses throughout the United States. Its elected Executive Council managed the regular business of the union, and was comprised of the President, Vice-President, Secretary-Treasurer, and four Directors. Article V.B.2 of the UAN Constitution gives the Executive Council the authority to "[i]nterpret the [UAN] Constitution and UAN policy." UAN's chief legislative organ, the National Labor Assembly ("NLA"), was comprised of delegates elected by UAN's thirteen affiliates, and met at regular intervals and at certain special meetings to conduct union business.

In 2009, UAN began discussing with CNA/NNOC and MassNA the possibility of forming a nationwide "superunion" of registered nurses. After considerable negotiations, the three unions in late July 2009 entered into the Agreement of Consolidation and Affiliation ("C&A Agreement"), which upon the three unions' ratification would form NNU. The UAN Executive Council approved the C&A Agreement on July 31, 2009, by a vote of 5-2, with Converso and Craft in the minority.

At the same meeting, the Executive Council approved a resolution regarding Article X of UAN Constitution. Article X, which governed dissolution, reads:

A.  Duration

    The duration of the UAN shall be perpetual or until dissolved as set forth in Section B below.

B.  Dissolution

    1.  The National Labor Assembly, by a seventy-five percent (75%) majority vote, may direct to the Executive Counsel to ballot the membership on the issue of UAN dissolution, provided that the subject of dissolution is on the Advance Agenda for that National Labor Assembly meeting. Dissolution shall only be approved by a seventy-five percent (75%) majority vote of the membership.

    2.  In the event of such dissolution, the Executive Council shall act as agents for the members and dispose of all physical assets of the UAN by public auction, private sales or otherwise, and any and all questions relating thereto shall be decided by majority vote of the Executive Council. After the payment of all outstanding debts and expenses, the remaining liquid assets shall then be prorated to the members of record in good standing.

The resolution—approved by a 6-0 vote, with Converso voting in favor and Craft abstaining—provided that the merger to be effected by the C&A Agreement would not constitute a "dissolution" of UAN within the meaning of Article X. As shall be seen, this resolution was important because a "dissolution" requires a 75% majority vote of both the NLA and the UAN membership.

On October 31, 2009, the Executive Council approved a resolution regarding Article I.D of the UAN Constitution. Article I.D, which governed affiliations, reads: "Subject to expeditious ratification by the National Labor Assembly at its next regular or special meeting or by ballot, the Executive Council is empowered to and may enter into affiliation agreements." The resolution—approved by a 4-3 vote, with Converso, Craft, and another Executive Committee member dissenting—provided that Article I.D applied to the C&A Agreement. This

resolution was important as well, for it effectively provides that the Executive Committee had the power to enter into affiliation agreements, subject only to "ballot" ratification by the NLA.

In early November 2009, the Executive Council and the NLA met in Florida for a special meeting to decide whether to ratify the C&A Agreement. On November 1, 2009, the Executive Council voted to proceed with mail balloting of NLA delegates to obtain approval of the C&A Agreement. On November 5, 2009, UAN, through the American Arbitration Association ("AAA"), mailed NLA delegates a ratification ballot. On November 23, 2009, AAA determined that the NLA delegates had ratified the C&A Agreement by a 40-22 vote—enough to satisfy the requirements for affiliations under Article I.D, but not to satisfy the requirements for dissolution under Article X. NNU came into existence at its founding convention on December 7, 2009. Days later, Converso was informed that she was no longer President or an employee of UAN.

In March 2010, UAN filed a Terminal LM-2 Report with the United States Department of Labor. The Report stated that UAN had "affiliated" with MassNA and CNA/NNOC to form NNU, and that this "affiliation and consolidation of labor organizations" was "[t]he reason for termination of the UAN as a separate reporting labor organization."

Also in March 2010, NNU filed a representation petition with Region 13 of the NLRB, seeking to displace INA as the exclusive bargaining representative of registered nurses at the University of Chicago Medical Center. INA objected that the representation petition violated the C&A Agreement, but INA was not permitted to litigate that issue in the NLRB proceeding. INA then entered into a Stipulated Election Agreement with NNU and the University of Chicago Medical Center. The NLRB conducted an election among eligible registered nurses, who voted in favor of representation by NNU.

This litigation commenced on November 13, 2009, between the time AAA mailed the ratification ballots to the NLA delegates and the time those ballots were counted. The original complaint, filed by Converso, Craft, and INA, stated a claim alleging that UAN's ratification of the C&A Agreement would constitute "dissolution" of the union under Article X of the UAN Constitution, and that such dissolution would fail to comply with Article X's mandate that UAN may be dissolved only upon the approval of 75% of both the NLA and UAN's entire membership. After Judge Manning denied Plaintiffs' motion for a temporary restraining order, and after the C&A Agreement was executed and NNU formed, Plaintiffs amended the complaint to add a second claim on INA's behalf, alleging that NNU and CNA/NNOC violated the C&A Agreement in connection with their purported raid on INA's bargaining unit at the University of Chicago Medical Center.

## Discussion

Defendants move for summary judgment on both of Plaintiffs' claims.

**I.      Alleged Violation of Article X of the UAN Constitution**

Plaintiffs' first claim alleges that the Executive Council incorrectly concluded that UAN's entry into the C&A Agreement, and UAN's resulting merger with two other unions into NNU, did not effect a "dissolution" within the meaning of Article X of the UAN Constitution. As noted above, Article V.B.2 of the Constitution grants the Executive Council the authority to interpret the UAN Constitution. The Seventh Circuit has instructed that "a union's interpretation of its own constitution, by-laws, and other promulgations is entitled to judicial deference; we must be able to call the interpretation unreasonable, perhaps even 'patently unreasonable,' before we can set it aside." *Fulk v. United Transp. Union*, 160 F.3d 405, 407-08 (7th Cir. 1998) (quoting *Air Wis. Pilots Protection Comm. v. Sanderson*, 909 F.2d 213, 218 (7th Cir. 1990)).

Such deference arises from the "federal policy of noninterference in internal union affairs." *Id.* at 408.

Plaintiffs contend that this rule of deference does not apply here because the Executive Council interpreted only an extrinsic document (the C&A Agreement) and not the UAN Constitution. Plaintiffs are incorrect. Nobody could reasonably say that the Supreme Court, in deciding whether a state statute violates the Contract Clause of the United States Constitution, interprets the state statute but not the Contract Clause. *See Gen. Motors Corp. v. Romein*, 503 U.S. 181 (1992); *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1 (1977). It is equally wrong for Plaintiffs to say that the Executive Council—in finding that UAN's entrance into the C&A Agreement, and its resulting merger with two other unions into NNU, was not a "dissolution" under Article X of the UAN Constitution—did not interpret the UAN Constitution. Accordingly, the Executive Council's conclusion is entitled to substantial deference, and may be overturned only if it unreasonably interprets Article X.

On that point, Plaintiffs contend that the C&A Agreement plainly effected a dissolution because UAN no longer exists as a separate labor organization. Plaintiffs assert that Defendants conceded that a dissolution occurred by stating in this litigation that "[w]ith the creation of the NNU, the UAN ceased to exist as the collective bargaining representative of nurses represented by the UAN and, as of the effective date, the separate existence of the UAN was terminated." Plaintiffs also observe that the C&A Agreement states, "As of the Effective Date, UAN shall terminate it separate existence." Plaintiffs add that UAN no longer conducts bargaining on behalf of registered nurses, having yielded that task to NNU; that nearly all of UAN's assets were given to NNU; that UAN's employees either became employees of NNU or were terminated; and that all of UAN's contracts were assigned to NNU. Finally, Plaintiffs cite the

Terminal LM-2 Report that UAN filed with the Department of Labor, which reports that UAN no longer existed as a "separate reporting labor organization."

These facts, all undisputed, merely show that UAN, having merged into NNU, no longer existed as a *separate* organization. The Executive Committee could reasonably view this state of affairs as constituting an "affiliation" under Article I.D, not a "dissolution" under Article X. The Executive Committee's view is buttressed by the C&A Agreement's (1) reference to the "consolidation" of UAN with MassNA and CNA/NNOC and (2) statement that "UAN and CNA/NNOC … enter into this agreement to consolidate *and affiliate* their separate organizations into one national labor organization" (emphasis added). Moreover, UAN's assets and staff became part of NNU, and its collective bargaining agreements with employers remained in place. Finally, the dissolution of a labor organization ordinarily relieves an employer of the obligation to continue bargaining under an extant agreement. *See Brooks v. NLRB*, 348 U.S. 96, 98-99 (1954) (employer need not bargain when union dissolves or becomes defunct); *Conkle Funeral Home, Inc.*, 266 N.L.R.B. No. 295 (Mar. 1, 1983). Here, however, UAN's existing agreements were expressly preserved through the C&A Agreement and remained in force and effect, further indicating that what happened to UAN was not a dissolution.

In sum, the Executive Council reasonably found that UAN did not dissolve, but instead that it affiliated and consolidated its operations with CNA/NNOC and MassNA. Defendants accordingly are entitled to summary judgment on Plaintiffs' first claim.

## II. Alleged Violation of the C&A Agreement

Plaintiffs' second claim alleges that NNU violated Article IX.D of the C&A Agreement by successfully seeking to displace INA as the representative of the bargaining unit of registered nurses at the University of Chicago Medical Center. INA also asserts that NNU, along with

CNA/NNOC, violated Article IX.D by committing other misdeeds—including soliciting signatures to oust the INA, distributing literature and phone-banking to criticize the INA, and secretly infiltrating University of Chicago Medical Center facilities to campaign against and undermine the INA—related to NNA's efforts at the Medical Center.

Article IX.D reads:

> Except as set forth in section A [assigning existing national collective bargaining agreements to NNU] … nothing in this Agreement shall affect or impair any bargaining rights of UAN's Affiliates … or any certification granted by any government board or agency to UAN's Affiliates … or their powers, rights, privileges, benefits, authority, duties and responsibilities under any of their collective bargaining agreements with employers, including check-off provisions and authorizations.

Because the registered nurses at the University of Chicago Medical Center are not a national bargaining unit, and because INA was a UAN affiliate, INA continued to represent the unit after the C&A Agreement was ratified. INA's claim rests on the premise that Article IX.D is a "no raid" clause that prohibited NNU and CAN/NNOC from interfering with INA's then-existing representation of the unit.

Plaintiffs' premise is incorrect. Article IX.D is not a "no raid" clause. The provision merely states that the C&A Agreement, by its own terms, does not disrupt the existing bargaining arrangements of non-national bargaining units; the provision does not forbid any signatory from filing representation petitions for existing local bargaining units. This reading makes sense in light of the structure of Article IX as a whole. Article IX.A transfers existing national bargaining agreements from the predecessor unions to NNU. Article IX.D clarifies that the C&A Agreement does not transfer existing *non*-national bargaining agreements away from UAN affiliates. But it contains no covenants or promises by any of the three merging unions, or

by NNU itself, to not seek to displace existing non-national bargaining agreements through the filing of new representation petitions.

The point is confirmed by contrasting Article IX.D with actual "no raid" provisions, which as a rule make perfectly clear that signatories are prohibited from seeking to displace existing collective bargaining relationships. *See*, *e.g.*, *Amalgamated Transit Union AFL-CIO-CLC v. Int'l Bhd. of Teamsters*, 2006 WL 211812, at *2 (N.D. Ill. Jan. 24, 2006) (provision stating that "[e]ach union agrees to refrain from organizing or representing employees as to whom an established collective bargaining relationship exists involving the other union"); *Local No. 1547, Int'l Bhd. of Elec. Workers, AFL-CIO v. Local No. 959, Int'l Bhd. of Teamsters*, 507 F.2d 872, 873 (9th Cir. 1974) (provision stating that "neither union would organize or represent employees 'in any situation where an established collective-bargaining relationship exists with the other union'"); *Int'l Bhd. of Fireman & Oilers, AFL-CIO v. Int'l Ass'n of Machinists*, 338 F.2d 176, 177 (5th Cir. 1964) (agreement "provides that no signatory union may represent or seek to represent 'employees as to whom an established bargaining relationship exists' with any other signatory union"). Because Article IX.D contains no prohibition against seeking to represent bargaining units represented by UAN affiliates, it is not a "no raid" provision, thus defeating the premise of INA's claim against NNU and CNA/NNOC.

INA contends that Article IX.D, despite its text, was *intended* to be a no-raid provision, and seeks to prove its point through extrinsic evidence—specifically, a declaration from Converso averring that UAN, being particularly concerned about prior raids and attempted raids by CNA/NNOC, wanted to protect its affiliates against raids. Such parol evidence cannot be considered where, as here, the agreement has an integration clause ("This Agreement sets forth the entire understanding of the parties with respect to the subject matter hereof.") and the

question is unambiguously resolved by the agreement's plain language. *See* Restatement (Second) of Contracts § 215; *Merk v. Jewel Food Stores Div. of Jewel Cos.*, 945 F.2d 889, 892-93 (7th Cir. 1991) (applying parol evidence rule in contract claim brought under § 301 of Labor Management Relations Act).

Finally, INA complains in a footnote that it cannot fully elaborate on NNA's and CNA/NNOC's alleged violations of Article IX.D because they "rushed" to file their summary judgment motions before discovery had taken place. If INA believed it needed discovery to respond to the summary judgment motion, it should have filed a motion under what then was Fed. R. Civ. P. 56(f) and what, as of December 1, 2010, is Fed. R. Civ. P. 56(d). Having failed to file a Rule 56(f) motion, INA may not oppose summary judgment on the ground that discovery was necessary. *See Wallace v. Tilley*, 41 F.3d 296, 303 (7th Cir. 1994); *Jagla v. LaSalle Bank*, 2006 WL 2796481, at *12 (N.D. Ill. Sept. 26, 2006). In any event, because INA is wrong to characterize Article IX.D as a "no raid" provision, further discovery would have been futile, as the C&A Agreement did not prohibit NNU seeking to represent the bargaining unit of registered nurses at the University of Chicago Medical Center or bar NNU or CNA/NNOC from taking steps preliminary to that effort.

In sum, because the C&A Agreement plainly does not forbid the actions alleged by INA, Defendants are entitled to summary judgment on Count II.

## Conclusion

Defendants are entitled to summary judgment on Plaintiffs' two claims, and the case is dismissed with prejudice.

December 10, 2010

United States District Judge